Christopher LUNA, Appellant,

v.

ESTATE OF Henry E. RODRIGUEZ,
Hilario Rodriguez, and Kay Williams
Rodriguez, Appellees.

No. 03–94–00476–CV.

Court of Appeals of Texas,
Austin.

Aug. 16, 1995.

William D. Stoneburner, Belton, for appellant.

Gene S. Silverblatt, Killeen, for Estate of Rodriguez.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

This appeal arises from an action to declare heirship in the estate of Henry E. Rodriguez. Appellant Christopher Luna appeals from a summary judgment granted in favor of appellees Hilario Rodriguez, Kay Williams Rodriguez, and the Estate of Henry E. Rodriguez. At issue is whether Christopher is decedent Henry Rodriguez's son by equitable adoption. We will reverse the trial court's judgment and remand the cause for further proceedings.

### BACKGROUND FACTS

Appellees did not file a brief in this appeal. Our summary of background facts is based on Christopher's brief, Christopher's third application for heirship, and uncontroverted summary judgment evidence. *See* Tex. R.App.P. 74(f) ("Any statement made by appellant in his original brief as to the facts or

the record may be accepted by the court as correct unless challenged by the opposing party."); *see also Bandy v. First State Bank,* 835 S.W.2d 609, 617 n. 2 (Tex.1992); *Seaside Indus., Inc. v. Cooper,* 766 S.W.2d 566, 569 (Tex.App.—Dallas 1989, no writ).

Christopher is the biological son of Alfred and Mary Helen Luna; his parents divorced when he was only three years old. Following the divorce, Mary Helen was awarded custody of Christopher by court order; the record does not reveal that Alfred's parental rights have ever been terminated. Mary Helen married Henry Rodriguez, and both she and Christopher began living with him on approximately Christopher's sixth birthday. Christopher alleges that sometime before or during this marriage, his mother and Henry orally agreed, but not in the presence of any witnesses, that Henry would adopt Christopher. Apparently, Christopher's mother notified Christopher's natural father of Henry's plan to adopt Christopher, but Christopher's father refused to consent to the adoption. A formal statutory adoption never took place. Christopher did not find out about Henry's alleged agreement to adopt him until after Henry's death.

Christopher lived in his mother and Henry's home for seventeen years. During that time, Henry, as breadwinner for the household, paid Christopher's tuition and other school expenses through high school and college. Christopher was reared, cared for, and clothed by Henry and his mother. In turn, Christopher performed the normal chores of a son, such as mowing the grass, taking out trash, and cleaning up dog litter. Christopher called Henry "dad," and Henry called Christopher "son." While Christopher never assumed the Rodriguez surname, Henry held out Christopher to his friends as his own son, and Christopher was known in the community as Henry's son. As an adult and even after his mother's death, Christopher maintained a relationship with Henry, calling him on Father's Day and inviting him to his home on holidays like Thanksgiving and Christmas.

Christopher had a distant relationship with his biological father. As a child, he had no contact with his father; as an adult, he has spoken to him only once or twice. Christopher alleges that for all intents and purposes, his natural father abandoned him.

Henry died intestate and childless on December 26, 1991. Christopher subsequently filed an application for declaration of heirship alleging his status as Henry's equitably adopted son and naming as respondents Hilario Rodriguez, Henry's brother, and Kay Rodriguez, Henry's second wife. Appellee Hilario Rodriguez specially excepted to Christopher's application as insufficient as a matter of law in that it failed to allege certain required elements of an equitable adoption. The trial court sustained some of the special exceptions, but Christopher chose to stand on his pleadings and test the validity of the trial court's ruling on appeal.

Hilario Rodriguez filed a second amended motion for summary judgment the day before the summary judgment hearing. The trial court granted Hilario's motion, stating that Christopher's application failed to state a cause of action and that no genuine issues of material fact existed to support Christopher's application. The trial court thus declined to find that Henry equitably adopted Christopher. Later, the trial court signed an order declaring Hilario and Kay Rodriguez to be the heirs of Henry's estate. Christopher appeals from the summary judgment and the trial court's final order declaring heirship, asserting in two points of error that the trial court erred (1) in granting summary judgment and (2) in declaring Hilario and Kay Rodriguez as heirs of Henry's estate.

## DISCUSSION

In his first point of error, Christopher contends that the trial court erred in granting the motion for summary judgment, implicitly complaining the trial court erroneously concluded that Christopher's application for declaration of heirship failed to state a cause of action to establish an equitable adoption. We review the propriety of a trial court's summary judgment based on a pleading deficiency de novo, taking all allegations, facts, and inferences in the pleadings as true and in a light most favorable to the pleader. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). We will affirm the summary judgment only if the pleadings are legally

insufficient. *Id.* However, we recognize that when special exceptions are sustained, as they were in this case, and the pleadings still fail to state a cause of action, the case may be disposed of by summary judgment. *See Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 10 (Tex.1974); *Sumerlin v. Houston Title Co.,* 808 S.W.2d 724, 726 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

## I. Elements of Equitable Adoption by Estoppel

 In the instant cause, we are charged with articulating the elements necessary to plead a cause of action to establish an equitable adoption and with determining whether Christopher's pleadings allege those elements. Courts apply the remedy of "equitable adoption," which in Texas is based on an estoppel theory,[1] when efforts to adopt are ineffective because of failure to strictly comply with statutory procedures or because, out of neglect or design, agreements to adopt are not performed. *Heien v. Crabtree,* 369 S.W.2d 28, 30 (Tex.1963). As first explained by the Texas Supreme Court in 1934, a decree of equitable adoption by estoppel rests in equity:

> [When] one ... takes a child into his home as his own, receiving the benefits accruing to him on account of that relation, assumes the duties and burdens incident thereto, and ... where justice and good faith require it[,] the court will enforce the rights incident to the statutory relation of adoption. *The child having performed all the duties pertaining to that relation, the adopting parent will be estopped in equity from denying that he assumed the corresponding obligation.*

*Cubley v. Barbee,* 123 Tex. 411, 73 S.W.2d 72, 81 (1934) (emphasis added).

The trial court's order states that Christopher's application failed to allege the following "essential elements of equitable adoption in Texas based on the doctrine of adoption by estoppel": (1) that both of Christopher's parents agreed with Henry that Henry would adopt Christopher; (2) the date that Mary Helen and Henry agreed Henry would adopt Christopher; (3) that Christopher conferred affection and benefits on Henry in reliance on the agreement to adopt; and (4) that Christopher conferred affection and benefits on Henry in reliance on Henry's representations that Christopher was his adoptive child. Christopher concedes that his application does not allege the elements listed above, but he argues that these elements are not necessary to state a cause of action to establish an equitable adoption. We agree.

The trial court and some courts of appeals appear to hold that the establishment of an adoption by estoppel requires the following: (1) proof of an agreement to adopt, (2) performance by the child, *and* (3) the child's *reliance* on the agreement to adopt or on the child's belief in its adoptive status.[2] *See Defoeldvar v. Defoeldvar,* 666 S.W.2d 668, 671 (Tex.App.—Fort Worth 1984, no writ); *Adler v. Moran,* 549 S.W.2d 760, 763 (Tex. Civ.App.—San Antonio 1977), *rev'd on other grounds,* 570 S.W.2d 883 (Tex.1978). In addition to these three elements, the trial court also appeared to require proof of the date on which the agreement to adopt took place in order to establish an equitable adoption.

 Undoubtedly, proof of an agreement to adopt is essential to establish an adoption by estoppel.[3] *Cavanaugh v. Davis,*

---

1. Many states invoke the equitable adoption remedy under a specific performance theory of recovery. *See generally* Note, *Equitable Adoption: They Took Him Into Their Home and Called Him Fred,* 58 Va.L.Rev. 727, 730–32 (1972). The Texas Supreme Court, recognizing that many courts grant equitable adoption relief based on specific performance of a contract to adopt, has rejected the specific performance theory, stating "the real classification of the remedy is that of estoppel." *Cubley v. Barbee,* 123 Tex. 411, 73 S.W.2d 72, 83 (1934).

2. By comparison, an equitable estoppel generally results when a person (1) detrimentally (2) relies on the (3) misrepresentation of another. *See Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991); *New Braunfels Factory Outlet Ctr., Inc. v. IHOP Realty Corp.,* 872 S.W.2d 303, 307 (Tex.App.—Austin 1994, no writ).

3. The agreement to adopt must be between the adopting parent and the child or the child's representative, such as a natural parent or someone in loco parentis. *Cavanaugh v. Davis,* 149 Tex. 573, 235 S.W.2d 972, 974 (1951). The agreement may be in writing, *Cubley,* 73 S.W.2d at 79,

149 Tex. 573, 235 S.W.2d 972, 974 (1951). Likewise, performance by the child to benefit the adopting parent is a necessary element.[4] *See* Edward W. Bailey, *Adoption "By Estoppel,"* 36 Tex.L.Rev. 30, 38 n. 32 (1957). As summarized by the supreme court: "[T]he doctrine of equity ... rests upon the adoptive parent having received the benefits of the relation fully performed by the child." *Jones v. Guy,* 135 Tex. 398, 143 S.W.2d 906, 909 (1940). Thus, a court will uphold the child's adoptive status when a natural parent delivers a child into the custody of others under an *agreement* between the parent and the custodians that the child will be adopted, and thereafter *the custodians and child live in a relationship consistent with that of parent and child. Cavanaugh,* 235 S.W.2d at 974.

■ Case law does not clearly establish reliance as a separate and necessary element of an adoption by estoppel. Under both *Cubley* and *Guy,* the remedy of adoption by estoppel is available when a child is induced to perform for the adoptive parents by the adoptive parents' representations about the child's adoptive status:

> [An estoppel operates] to preclude adoptive parents and their privies from asserting the invalidity of adoption proceedings, or, at least, the status of the adopted child, when, by performance upon the part of the child, the adoptive parents have received all the benefits and privileges accruing from such performance, and they by their representations induced such performance under the belief of the existence of the status of the adopted child.

*Cubley,* 73 S.W.2d at 79–80; *see also Guy,* 143 S.W.2d at 908. The *Cavanaugh* court, in setting forth the elements of an adoption by estoppel, did not expressly require that a child be induced to perform or confer affection and benefits on the adoptive parent out of reliance on an agreement to adopt. Rather, the *Cavanaugh* court indicated that the child must confer affection and benefits while "acting under and by virtue" of the agreement to adopt: in the absence of other written adoption documentation, a child must plead and prove that its natural parent and the custodian agreed that the custodian would adopt the child; equity then may require the trial court "to decree an adoption by estoppel in favor of [the child] who, acting under and by virtue of such an agreement, confers affection and benefits upon the [adoptive parent]." 235 S.W.2d at 974.

In *Cavanaugh,* the child requesting a declaration of equitable adoption did not learn that she was not the natural child of her alleged adoptive parents until she reached adulthood. *See id.,* 235 S.W.2d at 976. Thus, even though an agreement to adopt may have occurred, it would have been impossible for the child to prove that she relied on that agreement or representations based on it. The *Cavanaugh* court, while deciding the case against the claimant, did not do so on the ground of absence of reliance, but on the basis that the record contained some evidence in support of the trial court's finding that there was no agreement to adopt. *Id.,* 235 S.W.2d at 978. By not speaking in terms of reliance per se, *Cavanaugh* encompasses situations where a child may have no knowledge of an agreement to adopt, yet, *by virtue of the agreement,* the child is placed in a situation wholly consistent with that of natural parent and child and thus, believing the relationship to be one of parent and child, naturally confers affection and benefits on its adoptive parent or parents.

■ Under circumstances such as those in *Cavanaugh,* proof of an agreement to adopt may lead to an inference that the child has been led to believe the adoption has been completed. *See* Bailey, *supra,* at 41. In essence, the child acts upon the belief that the adoptive parent is its parent and lives in accord with a parent-child relationship.

---

or oral, *Jones v. Guy,* 135 Tex. 398, 143 S.W.2d 906, 910–11 (1940). Proof of the agreement does not require direct evidence; clear, convincing, and unequivocal circumstantial evidence as demonstrated by the acts, conduct, and admissions of the adopting parent is sufficient. *Cavanaugh,* 235 S.W.2d at 975, 978.

**4.** Later court opinions have referred to the child's "performance" as the child's conferring of affection and benefits on the adoptive parents. *See, e.g., Cavanaugh,* 235 S.W.2d at 974; *Adler,* 549 S.W.2d at 763 n. 3.

Proof of the agreement alone, without regard to any proof of reliance, may thus, in some cases, sufficiently establish the reliance element necessary to justify the estoppel remedy. *See id.*[5] *Cf. Mize v. Sims*, 516 S.W.2d 561, 566 (Mo.Ct.App.1974) (holding that reliance is not necessary to establish equitable adoption by estoppel because it is "inequitable and unjust to allow one to fail to comply with an agreement [to adopt] ... after the child has performed everything contemplated by the relation provided for") (quoting *Rumans v. Lighthizer*, 363 Mo. 125, 249 S.W.2d 397, 400–01 (1952)).

▆ A decree of equitable adoption is an equitable remedy. When clear, unequivocal, and convincing evidence of an agreement to adopt exists and the child has performed services for the adoptive parent even though the child had no knowledge of the agreement to adopt or its status as an adopted child, equity requires a decree of adoption by the court. We conclude that equity will act to decree an adoption by estoppel when the elements necessary to establish a cause of action for an equitable adoption by estoppel, as set forth by the supreme court in *Cavanaugh*, *Guy*, and *Cubley*, are present: (1) the existence of an agreement to adopt and (2) performance by the child. A child subject to an equitable adoption acts in reliance on its belief in its "status" as a child, not necessarily in reliance on an agreement to adopt or on representations about adoptive status.

## II. Christopher's Pleadings

▆ The trial court ruled that Christopher's application failed to state a cause of action for adoption by estoppel because, among other things, it did not allege that Christopher conferred benefits on Henry out of reliance on an agreement to adopt or a statement that he was adopted. In light of our conclusion above, we hold that Christopher's application was not inadequate by failing to plead reliance on the agreement or on Henry's representations. The trial court also required Christopher to plead the date Henry and Mary Helen entered into an agreement to adopt him. We hold that

pleading the date of the agreement to adopt is also unnecessary. Proof of the agreement can be by circumstantial evidence. *Cavanaugh*, 235 S.W.2d at 975. Circumstantial evidence may establish that an agreement to adopt took place without also establishing the exact date that agreement occurred. A plaintiff should not be required to plead what it does not have to prove. The function of a pleading is to define the issues at trial, not to state the evidence. *Bader v. Cox*, 701 S.W.2d 677, 686 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

▆ The trial court additionally required Christopher to plead that the agreement to adopt him was made between Henry and both of Christopher's parents, rather than just his mother. However, the adopting parent's agreement to adopt can be with the child, the child's parents, or someone in loco parentis. *Cavanaugh*, 235 S.W.2d at 974. Where the child's natural parents have died or have abandoned the child, the agreement to adopt necessarily takes place between one other than the child's natural parents. *See, e.g., Cheney v. Coffey*, 131 Tex. 212, 113 S.W.2d 162, 163 (1938) (agreement made with judge, who acted for and on behalf of minor children, when natural parents abandoned the children); *Malone v. Dixon*, 410 S.W.2d 278, 279–80 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.) (agreement made with superintendent of Texas Children's Home since parents were dead); *Hilt v. Hooper*, 203 S.W.2d 334, 336 (Tex.Civ.App.—Galveston 1947, no writ) (agreement made with child's stepfather since natural parents were dead). Moreover, when one natural parent abandons the child, an agreement with the other natural parent is sufficient. *See Ramsay v. Lane*, 507 S.W.2d 905, 907–08 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). In the instant cause, Christopher pleaded that for all intents and purposes his natural father abandoned him. Viewing Christopher's pleadings in a light most favorable to him, we hold that Christopher was not required to plead that Henry agreed with both of Christopher's parents in order to

---

**5.** Professor Bailey admits that "the factual inferences indulged in this class of cases in order to erect an estoppel in favor of the child are highly unrealistic." Bailey, *supra*, at 42.

plead a cause of action for equitable adoption.

Christopher's application for declaration of heirship alleged the essential elements of an equitable adoption set out in *Cavanaugh:* that an agreement to adopt took place between Henry and Christopher's mother and that Christopher performed by conferring love, affection, companionship, and other benefits on Henry. Christopher's pleadings were not legally insufficient to establish a cause of action for equitable adoption. The trial court erred by concluding Christopher's application failed to state a cause of action.

### III. Genuine Issues of Material Fact

In addition to concluding that Christopher's application failed to state a cause of action, the trial court concluded that summary judgment should be granted on the ground that no genuine issues of material fact existed. Christopher contends that the trial court erred in granting summary judgment on this basis because no summary judgment evidence was before the court. Hilario Rodriguez filed his second amended motion for summary judgment the day before the summary judgment hearing, and, according to Christopher, apparently gave the court depositions in support of his motion at the hearing.

Texas Rule of Civil Procedure 166a(c) requires the movant to obtain leave of court in order to file a motion for summary judgment and summary judgment evidence supporting that motion with less than twenty-one days' notice. Tex.R.Civ.P. 166a(c). Because summary judgment is a harsh remedy, we strictly construe the twenty-one day time limit. *Wavell v. Caller–Times Publishing Co.,* 809 S.W.2d 633, 637 (Tex.App.—Corpus Christi 1991, writ denied). However, the nonmovant's failure to

object to the late notice of the *motion* waives any error that the nonmovant had less than twenty-one days' notice. *Davis v. Davis,* 734 S.W.2d 707, 712 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). If the movant files late summary judgment *evidence* and no order appears in the record granting leave to file, we presume the trial court did not consider the evidence regardless of whether the nonmovant failed to object to the evidence. *Dominguez v. Kelly,* 786 S.W.2d 749, 753 (Tex.App.—El Paso 1990, writ denied); *Extended Servs. Program, Inc. v. First Extended Serv. Corp.,* 601 S.W.2d 469, 470 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

The record does not reflect that Hilario requested leave to file either his second amended motion or his summary judgment evidence or that the trial court granted leave to file the summary judgment evidence. The record does indicate the trial court relied on Hilario's second amended motion for summary judgment. In the absence of any objections to the late filings by Christopher, the trial court properly considered Hilario's second amended motion, but we presume that the summary judgment evidence was not before the trial court. The only summary judgment evidence before the trial court was that attached to Christopher's response to Hilario's first amended motion for summary judgment.[6]

The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in

**6.** Christopher filed a response to Hilario's second amended motion for summary judgment on the day of the summary judgment hearing without requesting leave of court. Texas Rule of Civil Procedure 166a(c) requires the nonmovant to file any response and affidavits at least seven days before the summary judgment hearing. Tex.R.Civ.P. 166a(c). Otherwise, leave of court must be obtained to file the response. *Id.* In the absence of an affirmative indication in the record

that the trial court accepted the late-filed response, we presume that the trial court did not consider the untimely filed material. *Johnston v. Vilardi,* 817 S.W.2d 794, 796 (Tex.App.—Houston [1st Dist.] 1991, writ denied). In this case, the record does not indicate the trial court permitted the late filing of Christopher's response to Hilario's second amended motion. Consequently, we do not consider it or the evidence filed with it.

his favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Hilario's second amended motion for summary judgment contends that "there is no genuine issue as to the following facts:" (1) that Henry did not agree with both of Christopher's natural parents to adopt Christopher; (2) that Henry did not agree with Christopher's mother to adopt Christopher; (3) that Henry did not confer affection and benefits on Christopher in reliance on an agreement to adopt; (4) that Christopher did not confer affection and benefits on Henry in reliance on an agreement to adopt; and (5) that Christopher did not confer affection and benefits on Henry in reliance on Henry's representations that Christopher was his adopted child. In light of our conclusions regarding the essential elements of an equitable adoption, only the second "fact" listed in Hilario's motion could defeat an element of Christopher's cause of action; the other "facts" will not support summary judgment. In other words, if Hilario conclusively established that Henry and Christopher's mother did not agree that Henry would adopt Christopher, then summary judgment is proper. Insofar as the trial court based its summary judgment on the other four "facts," it did so erroneously.

Indulging every reasonable inference in Christopher's favor, we cannot conclude that Hilario conclusively established that no agreement between Henry and Christopher's mother took place. The affidavit of Mary Margaret Sandate, attached to Christopher's response to Hilario's first amended motion for summary judgment, summarizes one of Sandate's conversations with Christopher's mother. Sandate recalls that Christopher's mother informed her that she and Henry had wanted Henry to adopt Christopher; that Henry had been in the process of adopting Christopher but Christopher's natural father would not consent to the adoption; that Christopher's father had threatened to expose her previous affairs with married men if Henry adopted Christopher; that she was fearful such exposure would hurt Christopher; that she would never hurt Christopher "no matter what"; and that Henry wanted to adopt Christopher regardless of the threats. Sandate further averred Henry talked about the attempt to adopt Christopher on numerous occasions, exclaiming to Christopher's mother, "[G]oddamn it, sometimes I wish you had gone through with the adoption."

Christopher's evidence raises conflicting inferences about the existence of an agreement to adopt, but we resolve all doubts in Christopher's favor. Christopher's burden at trial will be to prove the existence of an agreement by a preponderance of the evidence. *Moran v. Adler,* 570 S.W.2d 883, 885 (Tex.1978). He does not have this burden at the summary judgment stage. Rather, Hilario has the burden to prove his entitlement to judgment as a matter of law and to prove that no genuine issue of material fact exists. Whether an agreement to adopt took place is a material fact in this case; Hilario has presented no reviewable summary judgment evidence conclusively demonstrating that the absence of an agreement is not a genuine issue of material fact. Because the proof in this cause concerns an agreement between two persons who are now deceased and the reasons for which they acted in a certain manner, facts must still be determined, and summary judgment is not appropriate. Under these circumstances, we conclude that the trial court erred in granting summary judgment. We sustain Christopher's first point of error.

Christopher's second point of error complains that the trial court erred in declaring Hilario and Kay Rodriguez to be the heirs of Henry's estate. The determination of Henry's heirs depends on the outcome of Christopher's application for declaration of heirship, which, under our holding above, has not yet been determined. We sustain Christopher's second point of error.

## CONCLUSION

Having sustained Christopher's first and second points of error, we reverse the trial court's judgment and remand the cause to the trial court for a trial on the merits.