# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00309-CV

**Virginia K. Villarreal, Margarita V. Acevedo, David V. Acevedo, and Eduardo V. Acevedo, Appellants**

**v.**

**Gerardo Acevedo, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 1 OF CALDWELL COUNTY
## NO. 8601, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Virginia K. Villarreal, Margarita V. Acevedo, David V. Acevedo, and Eduardo V. Acevedo challenge the trial court's revision of a judgment declaring heirship. After appellants' mother, Melba V. Acevedo, died intestate, the trial court declared appellants to be her only heirs. The decedent's stepson, Gerardo Acevedo, filed a bill of review, seeking to be declared her heir through equitable adoption. The trial court then revised its judgment to include Gerardo as one of Melba's heirs. Appellants, Acevedo's half-siblings, contend that the revised judgment is erroneous because the trial court failed to make necessary findings of fact and because the evidence is legally and factually insufficient to support it. We will reverse the judgment, render judgment that

appellants are not equitably estopped from denying that Gerardo is Melba's heir, and reinstate the trial court's original judgment that the four appellants are Melba's only heirs.

## BACKGROUND

Gerardo was born to Leandro Acevedo and Irene Muñoz in 1948. In 1957, his parents divorced. Thereafter, Gerardo never spoke to, saw, corresponded with, or heard from Irene Muñoz, his mother, again, although he apparently maintained some contact with her parents; Irene Muñoz died in 1974. Within a year of the divorce, Gerardo's father married Melba Villarreal. Gerardo described his relationship with Melba as a typical mother-son relationship; his godmother, Henrietta Avila, confirmed that characterization of the relationship. Because Melba did not speak English, as a child, Gerardo accompanied her on shopping trips to translate for her. He helped change the diapers of at least Virginia, the oldest of his half-siblings. Gerardo testified that Melba disciplined him, gave him birthday and Christmas presents, sent food to him while he was in Vietnam, and treated him the same as she did his half-siblings. Gerardo introduced her as his mother, and identified her as his mother at his first communion and on his application to the fire department. In person, however, he called her "Melba" instead of mother.

Appellants testified that Gerardo's use of their mother's first name struck them as odd before they learned, around ages 10-13, that Gerardo had a different mother. They testified that, although their mother did not treat Gerardo differently from the way she treated them, they sensed some tension in her relationship with Gerardo. A family friend testified that Melba referred to Gerardo as her *entenado* (the Spanish word for stepson), although Gerardo's godmother denied

2

hearing Melba refer to him that way. Appellants testified that they had not heard that Gerardo considered himself to have been adopted by Melba until this lawsuit was filed.

Leandro and Melba died in a flood in 1998; Melba did not leave a will.[1] Appellants and Gerardo met annually to divide the profits from the family's turkey farm. For two years, they split the profits evenly, 20% apiece. David Acevedo, the brother who worked on the farm, believed this division unfair because he was doing all the work; he said he initially kept to himself his reservations about Gerardo sharing the profits equally with appellants. The siblings who were not working at the farm agreed to give David a bigger share—26½%—by reducing the remaining four shares to 18½%, although David testified that he never received the increased share. Subsequently, appellants decided that Gerardo was not entitled to a share derived from Melba's estate, and limited his disbursement to 10% of the profits from the farm—his share of their father's estate.

In 2000, as part of the administration of Melba's estate, the trial court declared the four appellants to be Melba's heirs. In October 2001, Gerardo filed a bill of review contending that he also was Melba's heir by virtue of her equitable adoption of him.

Section 31 of the probate code provides that "[a]ny person interested may, by a bill of review filed in the court in which the probate proceedings were had, have any decision, order, or judgment rendered by the court, or by the judge thereof, revised and corrected on showing error therein . . . ." Tex. Prob. Code Ann. § 31 (West 2003). This statutory bill of review need not conform to the rules and is not limited by the restrictions of an equitable bill of review. *Pure Oil Co.*

---

[1] It is not clear from the record whether Leandro left a will but, because no dispute about his heirs or his estate is before us, his testamentary status is not relevant to the disposition of this appeal.

*v. Reece*, 78 S.W.2d 932, 934 (Tex. 1935). To prevail under a statutory bill of review, one must specifically allege and prove substantial errors by the trial court that need not appear from the face of the record, but may be proved at trial. *Walker v. Sharpe*, 807 S.W.2d 448, 450 (Tex. App.—Corpus Christi 1991, writ denied). The probate code defines heirs as "those persons, including the surviving spouse, who are entitled under the statutes of descent and distribution to the estate of a decedent who dies intestate." Tex. Prob. Code Ann. § 3(o) (West 2003). Because Leandro died within 120 hours of Melba, he is deemed not to have survived her. *See id*. § 47 (West 2003). Thus, because Melba died intestate, the first group of survivors who may inherit from her are her children. *See id*. § 38(a)(1) (West 2003).

After a nonjury trial, the court revised its decree of heirship to include Gerardo as Melba's heir. The trial court ruled, not that Gerardo was Melba's biological child or that she legally adopted him, but that he was her heir through the principle of equitable adoption.

## DISCUSSION

Appellants contend that the court erred by declaring Gerardo an heir because it did not make the necessary findings and because the evidence did not support the findings necessary to the declaration of equitable adoption.

The term "equitable adoption" is a shorthand method of saying that "because of the promises, acts and conduct of an intestate deceased, those claiming under and through him are estopped to assert that a child was not legally adopted or did not occupy the status of an adopted child." *Heien v. Crabtree*, 369 S.W.2d 28, 30 (Tex. 1963). To show equitable adoption, a person must prove (1) the existence of an agreement to adopt and (2) performance by the child. *Luna v.*

4

*Estate of Rodriguez*, 906 S.W.2d 576, 581 (Tex. App.—Austin 1995, no pet.). Parties who live in a parent-child relationship based on an unperformed agreement to adopt the child do not create the legal status of a parent and child, but a parent's promises and conduct can create an equitable adoption which allows the child to assert intestate succession rights to the parent's estate. *Heien*, 369 S.W.2d at 30. The courts will recognize a child's right to inherit under the equitable theory of estoppel to prevent others from denying the child's right to inherit when efforts to adopt are ineffective because of failure to strictly comply with statutory procedures or because, out of neglect or design, agreements to adopt are not performed. *Spiers v. Maples*, 970 S.W.2d 166, 170 (Tex. App.—Fort Worth 1998, no pet.). Children claiming equitable adoption act in reliance on their belief in their 'status' as children, not necessarily in reliance on agreements to adopt or on representations about adoptive status. *Luna*, 906 S.W.2d at 581.

Appellants contend that, because the trial court failed to make either of the findings of fact necessary to support an equitable adoption and Gerardo did not request additional findings, the trial court could not declare an equitable adoption. *See* Tex. R. Civ. P. 299; s*ee also Pinnacle Homes, Inc. v. R.C.L. Offshore Eng'g Co.*, 640 S.W.2d 629, 630 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Although there is nothing designated as a "finding of fact" on either element of the cause of action, there are "conclusions of law" that concern both elements:

4. That the necessary elements to establish an adoption by estoppel are (a) the existence of an agreement to adopt and (b) performance by the child.

5. The Plaintiff, Gerardo Acevedo, established his claim of adoption by estoppel by a preponderance of the evidence and therefore is found by the Court to be an heir at law of Melba V. Acevedo.

These conclusions are tantamount to findings of the facts establishing each element. We are not bound by the trial court's designation of items as findings of fact or conclusions of law; we may consider items designated as findings to be conclusions, and vice versa. *See Ray v. Farmers State Bank of Hart*, 576 S.W.2d 607, 608 (Tex. 1979); *Des Champ v. Featherston*, 886 S.W.2d 536, 541 n.4 (Tex. App.—Austin 1994, no writ). The trial court made the factual findings necessary to support the judgment.

Next, we examine whether these findings are supported by legally sufficient evidence. We review the legal sufficiency of the evidence to support a trial court's findings of fact by the same standards we use in reviewing the legal sufficiency of the evidence supporting a jury's findings. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Starcrest Trust v. Berry*, 926 S.W.2d 343, 352 (Tex. App.—Austin 1996, no writ).

In reviewing a legal-sufficiency challenge, we consider the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting*, 964 S.W.2d 276, 285-86 (Tex. 1998); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Catalina*, 881 S.W.2d at 297. The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Burroughs Wellcome*, 907 S.W.2d at 499.

The evidence is legally insufficient to prove the first element of equitable adoption—the existence of an agreement by Melba to adopt Gerardo. As in the *Spiers* case, there

6

is undisputed evidence that Gerardo's birth mother essentially abandoned him after the divorce and that Melba was effectively the only mother Gerardo had thereafter. *See Spiers*, 970 S.W.2d at 171. There is evidence that Melba cared for and loved Gerardo as she did her own children, possibly even referring to him publicly as her son. There is undisputed evidence that he returned her love, helping translate for her and helping her raise appellants. He called her his mother at his first communion. There is even evidence that, after their parents' deaths, appellants initially treated Gerardo as a full sibling, disbursing to him a share of the profits equal to their profit shares from the family turkey farm in 1998 and 1999. But neither any emotional bond nor these actions support imputing the legal bond of adoption absent evidence of Melba's agreement to adopt Gerardo, and do not estop his half-siblings from denying his right to inherit through intestacy from Melba.

There is no evidence that a formal adoption proceeding was ever initiated or contemplated, and no evidence that an express promise of adoption was ever made by Melba to Gerardo or others. When Gerardo was asked during the bill-of-review hearing whether his father and Melba had any agreement regarding how he was to be raised, Gerardo responded, "The agreement was that Melba knew who I was: That I was Leandro Acevedo's son. Because she would ask me in the neighborhood who I was. She knew from the beginning that I was my dad's son." This is not evidence of an agreement *by Melba* to adopt Gerardo. There is no testimony here like in *Spiers*, where the sister of the adoptive mother said she was present when the birth mother *surrendered* the child to the adoptive mother, who renamed the child. *See Spiers*, 970 S.W.2d at 172. Unlike the child in *Spiers*, Gerardo knew that Melba was not his birth mother. *See id.* at 171. Although there was evidence that Gerardo listed Melba as his mother at his first communion and on

7

his fire-department application, unlike in *Spiers* there was no evidence that Melba signed a document listing Gerardo as her child. *See id*. at 171-72 (allegedly adoptive mother listed child as daughter on school enrollment forms, income-tax return, and life-insurance application). Unlike in *Luna*, there is no evidence that Melba expressed or had an intention to adopt Gerardo but was frustrated legally by his birth mother's lack of consent. *See* 906 S.W.2d at 578.

Viewing the evidence in the light most favorable to Gerardo and indulging every reasonable inference in his favor, the only evidence is that Melba was his loving *stepmother*, but not his adoptive mother. There is evidence that Gerardo loved Melba, referred to her as his mother at his first communion and on a job application, and performed services for her like translating in public and helping raise appellants; but this is evidence that goes to his performance, which is the second element of equitable adoption, and does not prove the existence of an intention by Melba to adopt him. Whether through design or neglect, Melba did not establish that legal mother-child relationship and there is no evidence that she intended to do so. She could have directed in a will that Gerardo inherit from her, but she died intestate. Although appellants acknowledged the nature of Gerardo's personal relationship with Melba and themselves, initially treating him as their full brother by giving him a one-fifth share of the profits from the family farm, they since have chosen to exclude Gerardo from a share of Melba's half of the profits and give him only one-tenth of the family's profits. Our task is to determine the legal and not moral correctness of this decision. We hold that the evidence is legally insufficient to support the trial court's conclusion that Gerardo proved the elements of equitable adoption and its declaration that Gerardo is Melba's heir.

**CONCLUSION**

We reverse the district court's order revising the declaration of heirship to include Gerardo as Melba's heir and render judgment denying that declaration. Accordingly, we reinstate the judgment that the four appellants are Melba's only heirs.

 

 

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Reversed and Rendered

Filed:   April 1, 2004

9