

**NUMBER 13-24-00304-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**IN THE ESTATE OF JUNE NELL SCHWAB, DECEASED**

---

**ON APPEAL FROM THE 135TH DISTRICT COURT
OF DEWITT COUNTY, TEXAS**

---

**OPINION**

**Before Chief Justice Tijerina and Justices West and Cron
Opinion by Justice West**

Appellant Carmen E. Schwab challenges five orders from the trial court related to an application to probate the will of June Nell Schwab, the decedent. By four issues, which we construe as three, Carmen argues that the trial court erred when it (1) granted appellees Joe E. Schwab's and Frank W. Burns III's plea to the jurisdiction and no-evidence and traditional motions for summary judgment, finding that Carmen does not have standing to challenge June's estate, (2) denied Carmen's motion to disqualify

appellees' attorneys due to a conflict of interest, and (3) granted appellees' objections and motion to strike Carmen's motion for new trial.

We hold that Carmen lacks standing to challenge the application to probate, because she failed to raise a genuine issue of material fact that she had a justiciable interest in the estate. Specifically, we find that Carmen failed to raise a material fact that she was equitably adopted by June's son James W. Schwab and that "an agreement" by James to adopt Carmen existed. Accordingly, we affirm.

## I. BACKGROUND

June and her husband had two sons, Joe (appellee) and James. In 2018, June executed a will with the help of attorney James K. Crain III, which bequeathed her entire estate in equal shares to each son. If either son predeceased June, then their share would be bequeathed to their respective spouse, and if either spouse predeceased June, that share would be bequeathed to June's "descendants, per stirpes." The will did not provide a definition of "descendant."

Shortly after James passed away in 2021, June executed a new will, again with Crain's help, which bequeathed her entire estate to Joe. The 2021 will stated that in the event Joe predeceased June, one fourth of June's estate would go to her "grandson, Michael Schwab," her "niece, Sandi Thomas," her "niece, Brenda Vaughn," and Joe's girlfriend or spouse, "Norma Jean Higgins."

June passed away on July 30, 2023. Appellees, as named executors of June's will, retained Crain to file an application to probate the will in the county court. Carmen filed an opposition arguing that June lacked testamentary capacity to effectuate her 2021 will, or she effectuated the will under undue influence or fraud by appellees. In response,

2

appellees filed a motion to dismiss for lack of standing and argued that Carmen "is not an heir, devisee, spouse, creditor, or any other having a property right or claim against" June's estate.

The case was transferred to district court. Appellees filed a plea to the jurisdiction and a no-evidence and traditional motion for summary judgment challenging Carmen's standing. Appellees attached a copy of James's "Proof of Death and Other Facts." The document indicates that Carmen, "who being duly sworn, deposes and s[aid] in open Court," that "[s]ince signing [James's] Last Will and Testament there were no child or children born to [James,] and [James] has not adopted any child or children since that date, or at any time." Appellees also attached a certified copy of James's will which identifies Carmen as his "stepdaughter."

Carmen filed responses to appellees' motions arguing that she was the "equitably adopted daughter of James," and, therefore, was June's heir or descendent and had standing to contest June's will. Carmen later filed a traditional motion for summary judgment on her claims and the issue of standing. Carmen attached, among other documents, James's death certificate which lists Carmen as his daughter, an obituary for James's father or June's husband which states that Carmen was his granddaughter, and an affidavit.

In her affidavit, Carmen attested that James married her biological mother when Carmen was eleven years old, and James raised her as his own daughter. She stated:

> James always referred to me as his daughter, and I always referred to him as my dad. From the time my mother and James married, I conferred affection and attention upon James. I was named the Executor of his Will, and held his powers of attorney, both statutory and medical. After my mother passed away, I took care of James until the day he died. James

3

raised me and taught me and treated me as his daughter for over 20 years and I loved him dearly.

She further attested that her mother "had agreed for James to adopt [her,] and he tried to do so," but the adoption never occurred because her biological father "would not consent to his parental rights being terminated." Carmen later changed her last name to Schwab.

Carmen also filed a motion to disqualify Crain and his firm. Carmen maintained that she had an attorney-client relationship with Crain because he represented Carmen in her role as co-executor in the probate of her mother's will and as executor of James's will. Representing appellees, she argued, created a direct conflict of interest and violated the Texas Disciplinary Rules of Professional Conduct.

The trial court held a hearing on appellees' plea to the jurisdiction and Carmen's motion to disqualify Crain and his firm. Carmen generally testified that she considered James her father, not her stepfather, and she considered June her grandmother. She said that James attempted to adopt her at one point, but the adoption was never granted because her "biological father did not sign off on it":

[Counsel]: Did your father [James] ever attempt to adopt you?

[Carmen]: Yes.

[Counsel]: Okay. And how do you know that?

[Carmen]: I went and testified for it—

[Counsel]: Okay.

[Carmen]: —for my name.

[Counsel]: So there was a hearing in which the issue of adoption was brought up, and you testified at that hearing, so you have personal knowledge of what went on at that hearing; correct?

[Carmen]: Yes.

4

[Counsel]: Okay. Was that adoption granted?

[Carmen]: No.

[Counsel]: Do you know why it wasn't [grant]ed?

[Carmen]: My biological father did not sign off on it.

She also testified on cross examination that the only reason she was identified as James's "stepdaughter" in his will was because that was how "Crain put it in the will."

The trial court granted appellees' plea to the jurisdiction, finding that Carmen had no standing, and granted appellees' motions for summary judgment. The trial court denied Carmen's motion for summary judgment and motion to disqualify. This appeal ensued.

## II. STANDING

By her first issue, Carmen argues that the trial court erred when it granted appellees' plea to the jurisdiction and motions for summary judgment. Carmen contends that she raised a genuine issue of material fact that James equitably adopted her, and, therefore, she is June's heir and has standing to challenge the probate of June's estate.[1]

### A. Standard of Review & Applicable Law

We review a trial court's determination of standing de novo. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502 (Tex. 2010). Under the Texas Estates Code, only an "interested person" has standing to contest the probate of a will. TEX. EST. CODE ANN. §§ 31.001, 55.001. The code defines an interested person as "an heir, devisee, spouse,

---

[1] Carmen contends that by being equitably adopted, she is James's "heir," and by extension, June's heir, but this implies that they died intestate or without a will. *See* TEX. EST. CODE ANN. § 22.015 ("'Heir' means a person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate."); *Moody v. Moody*, 613 S.W.3d 707, 716 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ("[T]here is no 'heir' in this case within the meaning of the Estates Code definition because William did not die intestate; William died leaving a will."). Nevertheless, the distinction is not important to our analysis, and we will refer to Carmen as James's heir.

creditor, or any other having a property right in or claim against an estate being administered." *Id.* § 22.018(1). For inheritance purposes, an adopted child is regarded as if they were the natural child of the adoptive parent or parents. *Id.* § 201.054(a). The code includes a child "adopted by acts of estoppel" in the definition of "adopted child." *Id.* § 201.054(e)(1)(B).

If, as in this case, a party moves for a no-evidence summary judgment and a traditional summary judgment, we first review the trial court's judgment under the no-evidence standard. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Under the no-evidence standard, the non-movant must produce more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Id*. The burden of producing evidence is entirely on the non-movant; if the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i). If the non-movant fails to produce more than a scintilla of evidence under the no-evidence burden, there is no need to analyze whether the movant's summary-judgment evidence satisfies the traditional Rule 166a(c) burden. *Ford Motor Co.*, 135 S.W.3d at 600. We examine the record in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

Likewise, we review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Cantu v. Perales*, 97 S.W.3d 861, 862 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.). When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, the standard of

6

review mirrors that of a summary judgment. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

**B.      Law of Equitable Adoption**

Equitable adoption, or adoption by estoppel, is an equitable remedy that allows a child to inherit from an adoptive parent whose efforts to adopt the child were "ineffective because of failure to strictly comply with statutory procedures, or of agreements which by neglect or design were not performed." *Dampier v. Williams*, 493 S.W.3d 118, 121 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Spiers v. Maples*, 970 S.W.2d 166, 170 (Tex. App.—Fort Worth 1998, no pet.)); *see Heien v. Crabtree*, 369 S.W.2d 28, 30 (Tex. 1963); *see also Est. of Hines*, No. 06-20-00007-CV, 2020 WL 5948803, at *4 (Tex. App.— Texarkana Oct. 8, 2020, no pet.) (mem. op.). The doctrine "protects the adopted 'child's right to inherit by adoption' as if the adoption were legally completed." *Dampier*, 493 S.W.3d at 121 (quoting *Spiers*, 970 S.W.2d at 170); *see also Est. of Hines*, 2020 WL 5948803, at *4.

"To establish adoption by estoppel, the adopted child must prove, by a preponderance of the evidence, (1) the existence of an agreement by the parent to adopt the child and (2) 'performance' by the child, meaning that the child must show 'love and affection' to the parent and render 'services' such as a child would render to a parent." *Dampier*, 493 S.W.3d at 121–22 (citations omitted); *Luna v. Est. of Rodriguez*, 906 S.W.2d 576, 581 (Tex. App.—Austin 1995, no writ). To establish the first element, "the child must prove that the [adoptive] parent either (1) executed a statutory instrument of adoption in the office of the county clerk; (2) attempted to complete the statutory adoption but failed to do so because of some defect in the instrument of adoption, or in its execution

7

or acknowledgement; or (3) agreed with the person to be adopted, or with such person's parents, or some other person *in loco parentis* that he or she would adopt such person." *Dampier*, 493 S.W.3d at 122 (internal quotations omitted); *see Cavanaugh v. Davis*, 235 S.W.2d 972, 974 (1951); *Luna*, 906 S.W.2d at 581; *see also Est. of Hines*, 2020 WL 5948803, at *6.

Carmen never alleged that James executed a written or statutory "instrument of adoption." Instead, she explicitly alleged that an agreement to adopt existed between James and her mother. Therefore, we focus on the latter option. *See Dampier*, 493 S.W.3d at 122. In other words, Carmen was required to raise a genuine issue of material fact as to whether an agreement to adopt existed between James and her biological parents. *See id.* The existence of an agreement to adopt can "be proved by the acts, conduct, and admissions of the parties and other relevant facts and circumstances." *Spiers*, 970 S.W.2d at 171 (citing *Cavanaugh*, 235 S.W.2d at 975); *Luna*, 906 S.W.2d at 579 n.3.

## C.    Analysis

Carmen testified, both in her affidavit and at the trial court hearing, that James agreed with her mother to adopt Carmen. However, Carmen explicitly testified that James did not receive consent from her biological father to adopt her, and her biological father did not agree to give up his parental rights. In the absence of an agreement to adopt from both biological parents, Carmen was required to show that her biological father abandoned her or was otherwise not a part of her life *See Luna*, 906 S.W.2d at 581–82 ("[W]hen one natural parent abandons the child, an agreement with the other natural parent is sufficient [to show an agreement to adopt]." (citation omitted)).

8

In this case, Carmen never alleged that James was the only father in her life or that her biological father later lost his parental rights or abandoned her. *See Spiers*, 970 S.W.2d at 172 (finding that the evidence was legally and factually sufficient to support the trial court's findings that there was an agreement to adopt, in part, because testimony indicated that the child's biological parent gave the child away to the adoptive parent); *Luna*, 906 S.W.2d at 581–82 (holding "that [the child] was not required to plead that [the adoptive father] agreed with both of [the child's biological] parents in order to plead a cause of action for equitable adoption" because the child "pleaded that for all intents and purposes his natural father abandoned him"). Instead, Carmen points to the following as evidence of an agreement to adopt:

- Carmen's mother married James when Carmen was eleven years old.

- Carmen changed her last name to James's last name.

- Carmen attested that she referred to James as her father and James always referred to her as his daughter.

- The obituary for James's father or June's husband identified Carmen as his granddaughter. Carmen alleges that the obituary was prepared by June and "is persuasive evidence Carmen was accepted and identified as a granddaughter by June."

- James's death certificate lists Carmen as his daughter.

However, this evidence does not represent an agreement by James to adopt Carmen—it merely indicates that Carmen and James shared a strong familial bond. *See Spiers*, 970 S.W.2d at 172; *see also Est. of Hines*, 2020 WL 5948803, at *6 ("While [appellant] presented evidence of his close relationship with [his stepfather], that

9

emotional bond alone does not support a finding of adoption absent evidence of an agreement or contract to adopt [appellant].”); *Johnson v. Chandler*, No. 14-03-00123-CV, 2004 WL 1946077, at *4–5 (Tex. App.—Houston [14th Dist.] Sept. 2, 2004, no pet.) (mem. op.) (“While appellant presented evidence of her close relationship with [her aunt], neither the emotional bond nor these actions support imputing the legal bond of adoption absent evidence of an agreement or contract to adopt appellant.”).

Carmen’s pleadings contend that “James tried to legally adopt [her], and [she] attended the hearing for adoption.” However, the record does not support this assertion. Instead, Carmen testified at the trial court hearing that “the issue of adoption” was brought up at a hearing “for [her] name” change. In fact, Carmen never alleged, at any point during litigation, that James initiated or attempted to initiate any type of adoption proceeding. While James may have wanted to adopt Carmen, a desire to adopt is not the same as an agreement to adopt. Without evidence of “acts” or “conduct” showing James made an actual effort to adopt Carmen, we risk obscuring the line between stepchildren and adopted children under the estates code. *See Spiers*, 970 S.W.2d at 171; *Luna*, 906 S.W.2d at 579 n.3.

This case simply does not involve biological parents giving away or abandoning a child to adoptive parents. *See, e.g.*, *Spiers*, 970 S.W.2d at 172; *Luna*, 906 S.W.2d at 581–82. Here, Carmen’s mother did not give up her parental rights, and Carmen’s biological father explicitly refused to give up his parental rights. The only evidence before the court regarding an “agreement to adopt” comes from a conversation between Carmen’s biological mother and James. Without citing legal authority, Carmen requests us to

10

sacrifice the parental rights of one biological parent, in an attempt to honor the wishes of the other biological parent.

In sum, we hold that Carmen failed to raise a genuine issue of material fact that an agreement to adopt existed. Carmen presented evidence that her biological father did not consent to the adoption and did not give up his parental rights, and she provided no evidence that he abandoned Carmen. *See Spiers*, 970 S.W.2d at 172; *Luna*, 906 S.W.2d at 581–83 (holding that appellant raised a genuine issue of material fact as to whether an agreement to adopt him took place between his adoptive father and biological mother because he alleged that "his natural father abandoned him" and attached an affidavit from a witness who included details about the agreement to adopt him); *see also Est. of Hines*, 2020 WL 5948803, at *6 (holding that the evidence was sufficient to uphold the trial court's finding that appellant was not equitably adopted by his stepfather because "[t]he record established that [appellant's biological father] never entered into a written or oral agreement with [the stepfather] allowing [the stepfather] to adopt [appellant]"); *In re Est. of Whiting*, No. 04-11-00011-CV, 2011 WL 4825886, at *3–4 (Tex. App.—San Antonio Oct. 12, 2011, pet. denied) (mem. op.) (same, where there was "no evidence that a formal adoption proceeding was ever contemplated by [the stepfather]" or "that [the stepfather] made an express promise to adopt [appellant]"); *Johnson*, 2004 WL 1946077, at *4–5 (same, in part because no witness testified that appellant's biological aunt agreed to adopt appellant). Moreover, Carmen failed to present evidence that James attempted to adopt her. *See Spiers*, 970 S.W.2d at 171; *Luna*, 906 S.W.2d at 579 n.3.

We overrule Carmen's first issue. Because this issue is dispositive, we decline to address Carmen's remaining issues. *See* TEX. R. APP. P. 47.1.

11

### III. CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Delivered and filed on the
8th day of January, 2026.